*424 OPINION.
Murdock:
The petitioners argue that they should have benefit of the carrying charges, which were reimbursed to their cotenant Kendall, in one of two ways, either that the amount of such charges should be allowed as additions to their proportion of the cost of the property thereby decreasing the gain on the sale, or that they should be allowed as deductions from gross income in the year in which they were repaid to Kendall. The former method was adopted by the petitioners in rendering their returns and the reduction of the cost by the respondent gave rise to the deficiencies in question. Kendall had, upon the acquisition of the property, agreed to advance the carrying charges whenever his associates were unable to do so and the payments in question were the result of the carrying out of that understanding. Interest was charged by Kendall to his associates on these advances.
To sustain the first contention the petitioners have called our attention to a provision contained in Regulations 45, article 231, issued by the Commissioner of Internal Revenue, with respect to allowing a taxpayer to capitalize carrying charges in the case of timber lands during a period of unproductiveness. It is unnecessary for us to pass upon the validity of this regulation, as in our opinion the petitioners do not present a case where we are justified in holding that the regulation in question, if valid, would be applicable, such regulation having been issued to cover cases where lands are held for future development. In the present case the lands were merely purchased for resale without any intention on the part of the purchasers of conducting a timber business.
*425 It is also argued by tbe petitioners that when such payments were reimbursed to Kendall they, in fact, constituted payments of taxes and interest. It is clear from the arrangement between the parties that the advances made by Kendall constituted loans made by him to his associates. The interest payments establish this beyond doubt. That the advances were used to discharge obligations arising in connection with the ownership of the property and that these obligations consisted of taxes and interest due, can in no way help the petitioners, since when the repayment was made to Kendall upon the termination of the deal the amounts so repaid were not taxes and interest, as such, but were amounts paid to discharge the obligation owing to Kendall.
On the issue raised by the petitioner Humphreys as to the existence of a partnership at the time the Hobbstown tract was sold, the evidence is slight. The testimony of both Humphreys and his son indicates that a partnership had been contemplated before the son] had finished his education. It also indicates that in August, 1920, the father and son had a conversation as to the actual commencement of a partnership and as to whether or not the Hobbstown tract should form a part of the assets of such partnership. Not only were no steps taken, however, to transfer to the son any portion of the father’s undivided one-quarter interest in the Hobbstown tract prior to sale, but after closing the deal the elder Humphreys treated the proceeds of the sale in all respects as his own and upon reinvestment of those funds the major portion went to the purchase of a tract, the deed to which was taken solely in the name of the father, a smaller portion of the funds being used to acquire another parcel, the deed to which was by error on the part of the seller made out in the name of the father and another intended to designate the son. But this conveyance was made not only without the instruction of the father but without his knowledge and contrary to the manner in which he would have instructed the deed to have been prepared, since it would have designated the father alone as grantee had his wishes in the matter been consulted.
While there is some evidence to show that discussions looking to a partnership between father and son had been entered into with some frequency, and while it is established that not later than December 15, 1920, such a partnership had actually been formed, it is our opinion that the petitioner had not adduced sufficient evidence to establish the existence of a partnership between himself and his son at the time of the sale of the Hobbstown tract or to show' that the Hobbstown tract was ever actually a partnership asset.

Judgment will be entered for the res'ponde'nt.